Bonald E. Coleman, J.
The claim was duly filed on July 15, 1964 and has not been assigned or submitted to any other court or tribunal for audit or determination. Pursuant to section 30 of the Highway Law, the State duly appropriated a portion of the property owned by the claimant in the Town of Hancock, Delaware County, New York, by taking the fee to the *1047 property as shown on Map No. 109 as Parcels Nos. 242 and 243, and the claim was amended to read also the property shown on Map No. 102 as Parcels Nos. 232, 248 and 264, Hancock-East Branch Part 1, State Highway No. 5456. The appropriation maps were filed in the County Clerk’s office of Delaware County on February 4 and 11, 1964 and were served on the claimant. The claim also included Map No. 102, Parcel No. 265, but it was stipulated that any claim for the property shown by that parcel was withdrawn. Claimant had a lease on the property by reason of a number of agreements entered into by the Town of Hancock, the Hancock Golf and Country Club, Inc., and others.
Claimant’s leasehold interest was based upon a lease which commenced on November 1, 1959 and was for a period of 20 years with the right of renewal for an additional 10 years. There was no retained rental nor were taxes to be paid and evidently grew out of a desire by the Town of Hancock to have a golf course developed. The lessee was to and did develop a nine-hole golf course together with a clubhouse. On the trial the State contended that the agreement between the Hancock Golf and Country Club, Inc., with August Tacea, a predecessor to claimant, did not include therein 2y2 acres owned in fee by that corporation but only the land it had leased from the Town of Hancock. We have read the agreement and find that it was intended thereby to lease all land owned by the corporation as well as all the lands under lease from the Town of Hancock. There was a dispute over the acreage here involved under the lease and we find it to be 85 acres.
The nine-hole golf course was not completed and opened until July 4, 1961. The appropriation took place in February, 1964 and the course had only been operated for the years 1961, 1962 and 1963 which hardly can be said to have been sufficient time in which to fully develop the potential of a golf course in this area. However, in the 1963 season there were 83 members and an average of 40 persons a week used the course and paid greens fees. Under these circumstances the evaluation of leasehold interest raised not only a novel question but one which presented difficulties.
The claimant’s approach for the most part was based upon the capitalization of estimated income. This income was a matter of speculation and the expenses used by the claimant’s appraiser in the capitalization method were not realistic. The State’s approach was based on an application of the reversion principle. It is this method, with adaptations made by us, that we have followed in making the award herein.
*1048 We do not include herein any amount for loss of prior access as the construction plans call for an access road not yet completed from which claimant is to have access to its property after the appropriation. The State appropriated .883± acres from claimant’s parking area and in doing so reduced the area available for parking by at least 50%. Admittedly, parking is essential to the operation of a golf course and the State by the appropriation has deprived the claimant of an area that was and would be needed for parking. While after viewing the property we would question the fact that there was as much parking available after the appropriation as testified to by the witnesses on the trial, including the claimant, we may not substitute our judgment for testimony of the witnesses. There is no question but what this fact consequentially damaged claimant’s remaining property to the extent testified to if not more. The State’s expert testified that if it were to be found that the parking area had been reduced by 50%, it would then be his opinion that claimant’s remaining property had been consequentially damaged as a result thereof from 20 to 25%. We have found 25% of the value of claimant’s remaining land after the appropriation represents the consequential damages.
There was no claim made that the golf course as such was not as playable after the appropriation as it had been before. Claimant did not have available additional land on which to expand the golf course so that there was no claim that it had been deprived of any land that it was holding for future development of additional golf holes. In arriving at the before value, the respective experts placed on the development of each hole for the golf course a value of between $7,000 to $18,000. A golf course architect testified for the State, placed a value on each hole but it appeared that his experience had been in connection with the laying out of golf courses and it did not include experience with the actual construction of golf courses and the cost to do so. We have found that the cost of developing the golf course was $10,000 per hole. In respect to 2.75 ± acres we have accepted the value placed on it by the State’s expert of $2,000 an acre and have found the remainder of the land to be worth $500 an acre. The depreciated value of the clubhouse at the time of the appropriation we find to have been $13,000. In determining what the value of claimant’s leasehold interest was at the time of the appropriation, we have found that there were remaining 24 years and 8 months on the leasehold term.

*1049

Total damages were $39,983.75 and 76% of this sum is $30,387.65 which is the amount of the damages as found by us to which the claimant is entitled by reason of the appropriation.
We award to the claimant the sum of $30,387.65 with interest thereon from February 11,1964 to the date of entry of judgment herein.